UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WAYNE WALTERS,

        Plaintiff,

v.                           CASE No. 8:17-cv-2304-T-23TGW

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,

        Defendant.

_____

## REPORT AND RECOMMENDATION

      The plaintiff seeks judicial review of the denial of his claim for supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff does not identify any reversible error, I recommend that the decision be affirmed.

I.

      The plaintiff, who was 26 years old at the time of the administrative hearing and who has an eleventh grade education, previously worked as a telemarketer (Tr. 60, 76-77). He filed a claim for supplemental

_____

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

security income payments, alleging that he became disabled due to "fractured right femur to the foot, both hands, c7" (Tr. 180). The claim was denied initially and upon reconsideration.

At his request, the plaintiff then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "right brachial plexus injury, cervical sprain, headaches, C7 fracture with cervical radiculopathy, right radial drop, status post-right femoral, tibial and fibular fractures, left scaphoid fractures, left long finger injury, and left carpal tunnel syndrome" (Tr. 39). The law judge concluded that, with these impairments, the plaintiff (Tr. 42):

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he cannot climb ladders and similar devices, crawl or work in hazardous environments. He can occasionally do other postural activities such as climbing stairs, balancing, stooping, crouching and kneeling. He can occasionally reach, handle and finger with his right dominant upper extremity and can frequently reach handle and finger with his left non-dominant upper extremity.

The law judge found, based upon the testimony of the vocational expert, that the plaintiff could return to his prior work as a telemarketer, as

he actually performed it and as it is generally performed in the economy (Tr.

48). Furthermore, the law judge elaborated (id.):

> The claimant's past work is sedentary and requires
> less exertion than what the claimant's residual
> functional capacity allows him to do.  Even if the
> claimant's residual functional capacity allowed
> only for sedentary work (together with the other
> limitations noted in the residual functional capacity
> assessment), the vocational expert testified that the
> claimant would still be capable of doing his past
> relevant work.

The law judge therefore ruled that the plaintiff is not disabled (id.).  The

Appeals Council let the decision of the law judge stand as the final decision

of the Commissioner.

## II.

In order to be entitled to supplemental security income, a

claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which

... has lasted or can be expected to last for a continuous period of not less than

twelve months."   42 U.S.C. 1382c(a)(3)(A).   A "physical or mental

impairment," under the terms of the Social Security Act, is one "that results

from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D). Furthermore, a claimant is not disabled if he can perform his previous work. 42 U.S.C. 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence,

and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff challenges the law judge's decision on three grounds, all of which relate to the frequency with which he can use his right upper extremity (arm, hand and fingers).  None of these contentions warrants reversal. Furthermore, in light of the Scheduling Order and Memorandum Requirements, any other challenge is properly deemed forfeited (see Doc. 13, p. 2)(challenges must be identified with particularity and supported by citations to the record and to the governing legal standards).

In October 2013, the plaintiff sustained serious injuries in a motorcycle accident, including a right brachial plexus injury.[2] The plaintiff underwent surgery in May 2014 to repair the damage. However, as the law judge found, the plaintiff has residual deficiencies that substantially decrease the functionality of his right upper extremity.

A. The plaintiff contends first that he cannot do prior work as a telemarketer because that job requires frequent fingering, and the law judge determined that the plaintiff can only occasionally use his right upper extremity (Doc. 16, p. 8). According to the Dictionary of Occupational Titles (DOT), one of the demands of a telemarketer is "frequent fingering." DOT 299.357-014, 1991 WL 672624. The DOT does not indicate whether this frequency applies bilaterally. See id.

The plaintiff argues that, in the DOT, frequent fingering is "not limited to only one upper extremity" and, therefore, "it would be impossible for [him] to perform this job because he cannot perform frequent fingering of

_____

[2]The brachial plexus is "the network of nerves that sends signals from your spinal cord to your shoulder, arm and hand. A brachial plexus injury occurs when these nerves are stretched, compressed, or in the most serious cases, ripped apart or torn away from the spinal cord." Severe brachial plexus injuries can cause paralysis and a loss of functioning and sensation. "Surgical procedures such as nerve grafts, nerve transfers or muscle transfers can help restore function." www.mayoclinic.org/diseases-conditions/brachial-plexus-injury/symptoms-causes.

his right upper extremity" (Doc. 16, p. 10).   The defendant responds,
correctly, that this argument is meritless because the vocational expert
testified that the plaintiff could perform the job of telemarketer, and that it
does not require frequent fingering bilaterally (Doc. 17, p. 5). See Phillips v.
Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (a vocational expert's
testimony is substantial evidence to support a decision when the hypothetical
question comprises all of the claimant's impairments).

In this regard, the law judge asked the vocational expert to (Tr.
77-78) (emphasis added)

> assume that the person has...occasional ability to
> reach, handle and finger with the right dominant
> hand and assume that a person can at least
> frequently use the left hand for these activities. So
> let's just assume frequent with the left and
> occasional with the right.   Now, with these
> limitations in mind, would the person be able to do
> the telemarketing job?

The vocational expert, who has more than 20 years experience in the field of
rehabilitation counseling (Tr. 231), stated, "I would conclude that the
individual could perform the work of telemarketing" (Tr. 78). The law judge
also asked the vocational expert whether his testimony is consistent with the
Dictionary of Occupational Titles, to which he answered, "Yes, sir, it [i]s"

(Tr. 80). Therefore, the vocational expert's testimony constitutes substantial evidence that the plaintiff could perform the job of telemarketer. See Phillips v. Barnhart, supra, 357 F.3d at 1240; Hurtado v. Commissioner of Social Security, 425 Fed. Appx. 793, 795 (11th Cir. 2011) (citing Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999)) (a law judge "may rely solely on the testimony of a VE in determining whether work is available ...in the national economy that a claimant is able to perform.").

Furthermore, the law judge was aware that the DOT does not specify whether frequent fingering is bilateral, and he questioned the vocational expert on that issue (Tr. 81). Thus, he inquired of the vocational expert:

> Q: ....I did ask you to assume some restrictions that affected one hand---one arm more than the other and if I'm not mistaken, the dictionary doesn't make those types [of] distinctions. Is that right?
> A: That is correct. It's not noted in the Dictionary of Occupational Titles.
> Q: So when addressing the question, even though there was nothing conflicting with it, it sounds like you may have utilized information outside of the dictionary to answer the--my questions?
> A: Yes. That would be based on my professional experience, over 20 years, working in the field of vocational rehabilitation.

This testimony, which was unchallenged by plaintiff's counsel, directly confirms that the job of telemarketer does not require frequent bilateral fingering. See Hurtado v. Commissioner of Social Security, supra, 425 Fed. Appx. at 795-96 ("[T]he VE [vocational expert] is an expert on the kinds of jobs a person can perform, while the DOT simply provides generalized overviews of jobs and not the specific requirements of a job."); Jones v. Commissioner of Social Security, supra, 423 Fed. Appx. at 939 (a vocational expert "provide[s] more specific information about...jobs...than the DOT"). In sum, substantial evidence supports the law judge's finding that the job of telemarketer does not require capabilities in excess of his residual functional capacity. See Hurtado v. Commissioner of Social Security, supra; Jones v. Commissioner of Social Security, supra. Accordingly, this argument fails.

B. The plaintiff's second contention is that (Doc. 16, p. 10):

[t]he finding that the plaintiff can perform occasional reaching, handling and fingering with his right dominant upper right extremity is not supported by substantial evidence. He can perform less than occasional reaching, handling and fingering with his right dominant upper extremity.

Thus, the plaintiff challenges the law judge's determination that he has the residual functional capacity to occasionally use his right upper extremity. This argument is meritless because substantial evidence supports the law judge's decision.

The law judge found that the plaintiff's brachial plexus injury was initially disabling, but that the plaintiff's functioning improved following surgery and treatment (see Tr. 46). He recounted, in detail, the medical evidence of the plaintiff's brachial plexus injury (Tr. 44-47), and summarized (Tr. 45):

> As the claimant's healing progressed, Dr. Figueroa evaluated him in May 2015 when he alleged experiencing continued pain caused by his brachial plexus injury (Ex. 11F at 2, 12F). Dr. Figueroa's examination showed that while the claimant had decreased muscle tone in his right upper extremity and atrophy of his right deltoid and biceps muscular groups with winging of the scapula, testing of the muscle groups in his right upper extremities were 4/5 (Ex. 11F at 3). The claimant's muscle power testing was 5/5 in all of his muscle groups in his left upper and bilateral lower extremities (Ex. 11F at 3). Although he alleged a total loss of the use of his right upper extremity, the medical evidence of record notes that the claimant retained some function of this extremity (Ex. 3F at 3). The continued function of the right upper extremity is corroborated by his abilities to engage in various activities discussed in this decision, such

as driving and doing light chores in the home. Moreover, recent physical examinations also do not show the claimant has a completely disabled right hand or that he lacks the use of that hand (Ex. 11F at 3). Neurological examination in August 2015 showed diminished strength and sensation in the right upper extremity; [the plaintiff] noted at that time...he is experiencing improving wrist and hand function despite numbness and weakness (Ex. 14F). Based on the diagnostic evidence and the claimant's treatment records regarding his upper extremities, the undersigned finds the claimant is capable of occasionally reaching, handling and fingering with his right dominant upper extremity and frequently reaching, handling, and fingering with his left non-dominant upper extremity.

The law judge also considered in determining the plaintiff's residual functional capacity the opinion of Dr. Walter Harris, a non-examining reviewing physician, who opined that the plaintiff's injury caused substantial, but not disabling, limitations. Thus, Dr. Harris opined in a Physical Residual Functional Capacity assessment dated August 21, 2014, that the plaintiff's ability to manipulate his right upper extremity is "limited to occas[ional] use of RUE [right upper extremity] for overhead and lat[eral] reach, fine and gross manipulation" (Tr. 103). Furthermore, Dr. Harris elaborated that, while the brachial plexus injury may not fully heal, he "[w]ould expect to see some further improvement" (Tr. 105).

Notably, the plaintiff states in his memorandum that "[i]t is true that the right upper extremity has gotten better. This is shown both by testing and the statement by the plaintiff to a physician that the hand was getting a little better" (Doc. 16, p. 16). See Tr. 409 (the plaintiff reports to Dr. Naomi Abel in August 2015 that, "[a]pproximately one month following surgery the patient...regained some wrist function and hand function which has continued to improve"); compare, e.g.,Tr. 217 (earlier report that the plaintiff could not drive because he could not use his right arm to shift gears) with Tr. 64 (the plaintiff testified at the administrative hearing that he does drive a few days weekly). Therefore, Dr. Harris's opinion that the plaintiff could occasionally use his right upper extremity may be a conservative view of the plaintiff's functioning, as it does not reflect the plaintiff's subsequent medical improvement.

The law judge gave Dr. Harris's opinion great weight, finding that Dr. Harris's "opinion...that the claimant is not disabled under the Social Security Act, is substantially supported and consistent with the record as a whole" (Tr. 48). See Oldham v. Schweiker, 660 F.2d 1078 (5th Cir. 1981) (law judge may give substantial weight to the opinion of a non-examining reviewing source who is considered an expert in Social Security disability

evaluation and whose opinion is consistent with the overall record); Social Security Ruling 96-5p, 1996 WL 374183 at *6 (S.S.A.) (Nonexamining reviewing physicians are considered experts in Social Security disability programs.).[3]

The plaintiff does not acknowledge Dr. Harris's expert opinion anywhere in his memorandum. Therefore, he certainly has not challenged the law judge's reliance on Dr. Harris's opinion that the plaintiff can occasionally use his right upper extremity. The failure to undermine the probative value of this evidence, in itself, warrants rejection of the plaintiff's argument that substantial evidence does not support the law judge's determination of his residual functional capacity (see Doc. 13, p. 2).

The law judge also evaluated the plaintiff's activities of daily living in determining that the plaintiff does not have disabling functional limitations. See 20 C.F.R. 416.929(c)(3)(I) (law judge is to consider daily activities in determining the extent to which a claimant's symptoms diminish

---

[3]Dr. Harris's opinion is dated August 21, 2014 (Tr. 106). The law judge, who examined the medical evidence in its entirety, found that the subsequent medical records, overall, showed improvement (see Tr. 45-47). Furthermore, as the law judge noted (Tr. 45), the plaintiff told a physician that his wrist and hand function continued to improve over time.

the capacity for basic work activities); <u>Macia</u> v. <u>Bowen</u>, 829 F.2d 1009, 1012 (11th Cir. 1987) (it is proper for the law judge to consider the plaintiff's activities of daily living in determining credibility of the plaintiff's subjective complaints).  In this respect, the law judge stated (Tr. 40):

> The record shows that in spite of the claimant's severe impairments, he is able to continue doing tasks such as watching television, listening to music, talking on the phone, using the computer, and reading books. [The plaintiff] is also able to take care of his personal grooming, can prepare simple meals, and do light housekeeping (Ex. 3E at 1). He is also able to go grocery shopping with his wife.  In addition, the claimant has a driver's license and drives a few times per week and picks his children up from school on Mondays and Thursdays.[4] He relayed that once he is enrolled in a GED program, he will be driving himself to school.  Because of the relative degree of independence, appropriateness, effectiveness, and sustainability of the claimant's activities, the undersigned finds the claimant's difficulties in carrying out activities of daily living are no more than mild.

Additionally, the law judge cited evidence that the plaintiff spends time with family and friends, attends cookouts and sometimes eats at restaurants, and takes his children bowling (although he does not bowl) (Tr. 40).

---

[4]The plaintiff lives with his partner and three children, who are 12, 7 and 4 years old (Tr. 43).

The plaintiff does not acknowledge the law judge's explanation for finding that the plaintiff can occasionally use his right upper extremity and, therefore, he certainly has not undermined it (Doc. 13, p. 2) (The Scheduling Order and Memorandum Requirements provides that "[t]he Plaintiff must identify with particularity the discrete grounds upon which the administrative decision is being challenged" which "must be supported by citations to the record of the pertinent facts and by citations of the governing legal standards"); see also Sanchez v. Commissioner of Social Security, 507 Fed. Appx. 855 n.1 (11th Cir. 2013). Regardless, the plaintiff's argument that he is not capable of occasionally using his right upper extremity is unavailing.

The plaintiff contends, vaguely, that "the culmination of the evidence and the testimony support a finding that the plaintiff can only use his right upper extremity on less than an occasional basis and the finding that he can use it more than that is not supported by substantial evidence" (Doc. 16, p. 16). In this respect, the plaintiff argues that his "serious brachial plexus injury on the right with a C5 nerve avulsion" caused "a serious reduction of the plaintiff to use his right arm and hand" (id., p. 10).[5]

---

[5]In this context, "occasionally" means "cumulatively 1/3 or less of an 8 hour day" (see Tr. 102).

It is well established that "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work."  Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). In other words,  it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); McCruter v. Bowen, supra.

The plaintiff identifies several medical records which show abnormal test results and physical examination findings (see Doc. 16, pp. 11-14).  However, the plaintiff does not identify any medical opinion, from a treating doctor or otherwise, that the plaintiff's brachial plexus injury caused greater permanent  functional limitations than determined by the law judge. See Longworth v. Commissioner of Social Security, 402 F.3d 591, 596 (6th Cir. 2005)(physician needs to translate how abnormal clinical findings affect functioning); see also Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled").

On the other hand, the law judge cites to medical findings that are not indicative of disabling limitations, and the law judge's finding that the

plaintiff can occasionally use his right upper extremity is supported by the expert medical opinion of Dr. Harris.   Therefore, the law judge was not compelled to find, based on the medical evidence, that the plaintiff's manipulative abilities are more limited than his determination of the plaintiff's residual functional capacity. See Adefemi v. Ashcroft, supra (findings of fact may be reversed only when the record compels a reversal); Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986) ("The weighing of the evidence is a function of the factfinder, not of the district court."); Lawton v. Commissioner of Social Security, 431 Fed. Appx. 830, 833 (11th Cir. 2011) ("While the record does contain some evidence that is contrary to the ALJ's determination, we are not permitted to reweigh the importance attributed to the medical evidence.").

The plaintiff also relies upon his hearing testimony that "[h]e cannot do anything with the right arm" (Doc. 16, p. 14). The plaintiff asserts, among many other limitations, that he cannot write, button clothes, "use both hands" or extend the arm to do anything other than pinching fingers (id., pp. 14-15).   However, the law judge found that the plaintiff's assertions of disabling functional limitations were not credible (Tr. 43) and that determination is supported by substantial evidence (see, infra, pp. 19-21).

-17-

Therefore, the law judge was not required to accept that testimony in determining the plaintiff's residual functional capacity. See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004) (the law judge is not required to include in the hypothetical question allegations that have been properly rejected).

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 42). Moreover, he set out the appropriate standard (id.). This demonstrates that the law judge employed the proper analysis. See Wilson v. Barnhart, supra, 284 F.3d at 1225-26.

Specifically, the law judge found that (Tr. 43):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with or well supported by the medical evidence and other evidence in the record for the reasons explained in the decision.

Notably, the law judge credited, to a significant extent, the plaintiff's complaints of pain and limitations, as he substantially limited the plaintiff to only occasionally reaching, handling, and fingering with his right upper extremity (Tr. 42). He only discredited allegations of total disability.

The law judge found that the medical evidence does not warrant a finding of disability, and that the plaintiff "described a range of daily activities that are not consistent with the complaints of disabling symptoms

and limitations" (Tr. 47). For example, the law judge cited evidence that the plaintiff "routinely drives on a weekly basis, picks his children up from school and goes bowling with the[m], although he denied bowling. Furthermore, the claimant even helps with the household chores" (id., see also Tr. 40). The plaintiff also reported to a Social Security disability examiner that, although "[h]e has some pain in his hands...[he] is able to write, button a shirt & turn a door knob" (Tr. 188).

> Moreover, the law judge considered that (Tr. 47)
>
> [t]he claimant...has not consistently worked in the past and stopped working prior to his alleged onset date, showing that the reason he was not working was not necessarily because of his severe impairments. In addition, he was prescribed and takes multiple medications for his alleged impairments and he admitted that they are helpful in controlling his symptoms.

This explanation is more than sufficient to discount the plaintiff's subjective complaints. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006); see also Werner v. Commissioner of Social Security, 421 Fed. Appx. 935, 939 (11th Cir. 2011) ("The question is not ... whether [the] ALJ could have reasonably credited [the plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit

it."). The plaintiff does not mention the law judge's credibility analysis and, therefore, he certainly has not refuted it. Consequently, a challenge to the law judge's credibility determination is properly forfeited (see Doc. 13, p. 2).

In sum, there is substantial evidence supporting the law judge's decision, and the plaintiff fails to identify evidence that compelled the law judge to find that the plaintiff could not occasionally use his right upper extremity. See Adefemi v. Ashcroft, supra (findings of fact may be reversed only when the record compels a reversal); Buttram v. Social Security Administration Commissioner, 594 Fed. Appx. 569, 572 (11th Cir. 2014) (The court "must uphold the Commissioner's determination even if a preponderance of evidence supports a contrary finding so long as sufficient evidence remains for a reasonable person to reach the Commissioner's conclusion"); Graham v. Bowen, supra, 790 F.2d at 1575 ("The weighing of the evidence is a function of the factfinder, not of the district court.").

C.  The plaintiff's final argument is that (Doc. 16, p. 16)

> [t]he injury and resulting damage to the right upper extremity of the plaintiff is too complex for the ALJ to determine the residual functional capacity concerning the right upper extremity. The ALJ had a duty to develop the record. That development would have required the ALJ to submit the medical

records to a nonexamining medical examiner to determine the limitations created by the injury.

The only contention specified in this heading is that the law judge should have appointed a nonexamining medical doctor to assess the plaintiff's right upper extremity functional limitations. This contention is baseless because a nonexamining medical examiner did assess the plaintiff's right upper extremity limitations (see Tr. 103). Thus, Dr. Harris opined that the plaintiff was limited to occasional use of his right upper extremity, and the law judge gave that opinion great weight.

The law judge has a basic duty to develop a full and fair record. Ellison v. Barnhart, supra, 355 F.3d at 1276. However, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Id.; Osborn v. Barnhart, 194 Fed. Appx. 654, 668 (11th Cir. 2006) (noting that the plaintiff "had the burden of proof, and although he could have sought a statement from one of his other treating physicians regarding his limitations and functional deficiencies, he did not"). Significantly, the plaintiff was represented by counsel during the administrative proceedings (see Tr. 37). Therefore, the burden was on the plaintiff and his lawyer, and not the law judge, to obtain additional medical

opinion evidence if he thought it was necessary to prove he was disabled. <u>See</u> <u>Ellison</u> v. <u>Barnhart</u>, <u>supra</u>; <u>Osborn</u> v. <u>Barnhart</u>, <u>supra</u>.

Additionally, the plaintiff contends in the body of this argument that the law judge's duty to develop the record "would have been met by setting the case out to a post hearing consultative exam to determine the limitations of the right upper extremity" (Doc. 16, p. 17). However, a law judge is not required to order a consultative examination if the record contains sufficient evidence for the law judge to make an informed decision. <u>Ingram</u> v. <u>Commissioner of Social Security Administration</u>, 496 F.3d 1253, 1269 (11th Cir. 2007). <u>See</u> <u>also</u> 20 C.F.R. 404.1519a(b) (a consultative examination may be purchased "when the evidence as a whole is insufficient to ... make a determination or decision on your claim"); <u>Wilson</u> v. <u>Apfel</u>, 179 F.3d 1276, 1278 (11th Cir. 1991); <u>Castle</u> v. <u>Colvin</u>, 557 Fed. Appx. 849, 853 (11th Cir. 2014) (the law judge "has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision").

The plaintiff has not shown that the record lacked sufficient evidence for the law judge to make an informed decision regarding the

functional loss resulting from the plaintiff's brachial plexus injury.  The law judge had medical records with physical examinations and diagnostic test results, including a post-hearing submission of what plaintiff's counsel referred to as "a detailed report" from the University of South Florida (Tr. 71).  The law judge also had ample evidence of the plaintiff's activities of daily living.  Furthermore, as indicated, Dr. Harris opined as to the functional limitations to the plaintiff's right upper extremity due to the brachial plexus injury (see Tr. 103-106).  Accordingly, the law judge could reasonably conclude that he had sufficient information to make a determination of whether the plaintiff's brachial plexus injury was disabling.  See Wilson v. Apfel, supra, 179 F.3d at 1278 (the record "was sufficient for a decision and additional expert testimony was unnecessary").  Notably, the plaintiff's attorney at the hearing did not request a consultative examination.  Thus, the plaintiff obviously did not think such an examination was necessary.  See Osborn v. Barnhart, supra, 194 Fed. Appx. 654, 668-69 (the contention that more medical evidence was necessary was unpersuasive because, among other reasons, counsel did not allege that the medical records were inadequate).

Moreover, in order to justify a remand on the basis of a due process violation, the plaintiff must demonstrate that he was prejudiced by the law judge's purported failure to develop the record. Graham v. Apfel, 129 F.3d 1420, 1423 (11ᵗʰ Cir. 1997); see, e.g., Smith v. Commissioner of Social Security, 501 Fed. Appx. 875, 878-79 (11ᵗʰ Cir. 2012) (law judge's failure to order a consultative psychological evaluation was not error because the record does not reveal an evidentiary gap that prejudiced the plaintiff). The plaintiff does not mention this prong of the argument (Doc. 16, pp. 16-17). Regardless, the plaintiff's point was that the record lacked an expert medical opinion regarding the loss of functionality to the plaintiff's right upper extremity (see id.). However, as discussed supra, the record does contain an expert opinion as to the degree of functional loss caused by the brachial plexus injury. Furthermore, speculation that another physician's opinion might be helpful applies in virtually every case; it certainly does not show that the record was not fully developed in this matter.

Accordingly, the plaintiff has failed to show that the law judge lacked sufficient evidence to determine the functional limitations caused by the plaintiff's brachial plexus injury. Therefore, this argument also fails.

IV.

For these reasons, the decision of the Commissioner is supported by substantial evidence and does not contain reversible error.  I, therefore, recommend that the decision be affirmed.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: AUGUST _15_, 2018

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.